UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| CBH EQUITY, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:15-CV-137 |
| | § | |
| MURPHY OIL USA, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER ON PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT
AND DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER
OF LAW**

This matter was tried to a jury on March 19 through 22, 2018. The jury returned a verdict in favor of Plaintiff CBH Equity, LLC's (CBH) and against Defendant Murphy Oil USA, Inc. (Murphy) on all theories submitted: breach of contract, fraud (misrepresentation and nondisclosure), statutory real estate fraud (false representation of fact and false promise), and negligent misrepresentation. The jury awarded damages based on measures known as the benefit of the bargain and out-of-pocket loss.

Before the Court are CBH's Motion for Entry of Judgment (D.E. 122) and Murphy's Renewed Motion for Judgment as a Matter of Law (D.E. 126), together with responses and replies (D.E. 126, 127, 133). For the reasons set out below, the Court DENIES Plaintiff's motion for judgment (D.E. 122) and GRANTS Defendant's motion for judgment as a matter of law (D.E. 126).

## DISCUSSION

### A. Facts

Non-party sellers offered for sale a tract of land adjacent to a Wal-Mart store. The evidence at trial demonstrated that Murphy wanted to purchase the front portion of that tract for a gas station, but that the sellers would not sell less than the whole tract. So Murphy approached CBH, to see if it would buy the back portion in tandem with Murphy's purchase of the front portion. Murphy urged that it would be a great fit for CBH's business plan (a boat storage facility), in part, because customers drawn to one of the three (boats, gas, and Wal-Mart) would be conveniently drawn to the others through a planned cross-access easement.

CBH agreed and Murphy, which had a long-standing working relationship with Wal-Mart, began negotiations to obtain the easement. There is no evidence, and no jury question was submitted to establish, that Murphy had any principal-agent relationship with Wal-Mart. Neither is there any evidence or jury question intended to establish that Murphy had a special relationship with CBH. All transactions involved arms-length negotiations between experienced business people.

During the time leading up to closing the sale, Murphy made several representations to CBH regarding the status of its negotiations with Wal-Mart. On one hand, Murphy indicated that Wal-Mart had agreed to the easement. On the other, Murphy indicated that Wal-Mart's process was a very slow one and that CBH needed to agree to the language of the easement at its earliest opportunity so that they could get the ball rolling as soon as possible. A number of drafts of the easement agreement were

circulated and CBH signed off on the final draft on June 8, 2012. PX 9, 10, 11. Wal-Mart and Murphy, however, did not sign the draft at that time.

Despite the various efforts to obtain the easement, when it came time to close the sale of the property, neither Murphy nor CBH had obtained an executed easement from Wal-Mart. Among the circumstances were the following, which constitute "red flags" that time was not of the essence, particularly with Wal-Mart, and that the easement might be substantially delayed:

1. None of the transaction documents conditioned CBH's purchase on Wal-Mart providing the easement;

2. None of the transaction documents provided CBH a remedy if Wal-Mart did not provide the easement (either at all or within a particular time);

3. CBH knew that it was dealing with Murphy representatives, not Wal-Mart representatives, and that no effective easement could be obtained but from Wal-Mart;

4. CBH was aware before closing that Wal-Mart had not signed the easement;

5. Murphy told CBH that Wal-Mart could take a very long time to approve the easement, and CBH did not ask for a firm date or condition its exercise of its purchase option on receiving a firm date; and

6. CBH did not request to delay closing until Wal-Mart had signed the easement or opt out of its purchase option, but instead closed the purchase.

On July 30, 2012, CBH closed the sale and took possession of its portion of the tract, paying $10,000 to clear the land in preparation for the planned improvements. PX 6, 7.

The written agreement between CBH and Murphy governing the dispute between them is a Reciprocal Easement and Restrictions Agreement (REA),[1] executed at the time of closing on July 30, 2012. PX 13. It provides that CBH and Murphy will allow, among other easements, a cross-access easement to each other for the purpose of pedestrian and motor vehicle traffic between their respective businesses on the tract. Nothing in the REA requires Murphy to deliver an easement from Wal-Mart. Murphy did comply with the REA by building its fueling station and making other infrastructure improvements and CBH has not sued Murphy for breach of the REA.

After closing, Murphy continued to work with Wal-Mart to get the proposed cross-access easement executed. But by March 20, 2015, CBH did not have Wal-Mart's cross-access easement and it filed this action against Murphy. D.E. 1. It was not until June 30, 2016—almost four years after the closing and while this case was pending—that Wal-Mart finally executed the easement. DX 9. Promptly thereafter, Murphy executed it on July 7, 2016. *Id*.

Upon final execution of the easement agreement, Murphy immediately forwarded the agreement to CBH through counsel and proposed to finish the driveway allowing access between all three businesses. DX 41. But CBH did not respond. Instead, CBH prosecuted this case, contending that the delay destroyed its business opportunity and that competition now makes it unprofitable to build a boat storage facility. CBH sought and

---

[1]  The REA contains a merger clause making it, together with a Development Agreement, the sole agreement of the parties, eliminating all other understandings and agreements. PX 13, ¶ 19. There is no document denominated "Development Agreement" in the record. However, there is a Tax and Plat Agreement between CBH and Murphy. PX 7. That agreement speaks only to the subdivision of the tract between them and the allocation of taxes accordingly.

obtained a jury award of damages for its lost benefit of the bargain and out-of-pocket damages for purchase and clearing, despite evidence that the tract has appreciated in value since the purchase and is worth more than the monies expended to purchase and clear it.

## B. Red Flags and the Reliance Requirement of Tort Actions

In opposing CBH's request for entry of judgment on the verdict and in seeking its own judgment as a matter of law, Murphy challenges every element of CBH's causes of action and sets up other defenses. The Court first considers the argument that "red flags" put CBH on notice that Murphy had no control over the timing of Wal-Mart's execution of the cross-access easement and that nothing guaranteed the easement by any particular deadline. Those "red flags" are set out above. Murphy contends that they prevent CBH from claiming justifiable reliance on any of Murphy's alleged false statements or misrepresentations—a challenge to all of the tort theories.

### 1. "Red Flags" in the Law

This Court is sitting in diversity jurisdiction and Texas substantive law applies to the causes of action sounding in tort. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). According to the Supreme Court of Texas, actions in tort may be defeated as a matter of law if "red flags" preclude justifiable reliance on the defendant's tortious conduct. *E.g.*, *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 61 Tex. Sup. Ct. J. 522, 2018 WL 1440625 (2018) (citing *Lewis v. Bank of America NA*, 343 F.3d 540 (5th Cir.

2003)).[2]   Murphy seeks judgment as a matter of law against CBH on its fraud and misrepresentation claims on this basis.

In *JPMorgan*, the bank acted as trustee for Red Crest Trust and leased a number of its real estate tracts to GeoSouthern Energy Corporation.   GeoSouthern did not immediately file its leases of record.  When Orca sought to lease tracts from JPMorgan, it recognized that that the bank was inserting a non-standard clause negating any warranty of title.  Orca knew that it would have to be especially careful about verifying that title was good before closing the deal.  Orca checked title on nearly a daily basis until it signed a letter of intent with a 30-day option period in which the bank was precluded from leasing the tracts to anyone else.  Orca then stopped checking title.

At the time of leasing, Orca asked for, and received, the bank's representation that the tracts were open, meaning that they had not previously been leased.  However, just a few days into the 30-day option period, GeoSouthern had finally filed its leases of record. So after Orca filed its own leases, GeoSouthern discovered the new leases and confronted the bank.  The bank realized its mistake and tendered a refund of Orca's substantial bonus payments, while claiming that the negation of title clause did not require the trust to do so.  But Orca refused the tender and instead sued the bank for breach of contract, fraud, and negligent misrepresentation, claiming lost profits.

The trial court dismissed all of Orca's claims after a pretrial conference.  The breach of contract claim was defeated by the negation of warranty of title clause.  The

---

[2]   CBH objects to the use of *JPMorgan* as authority for this case because it is newly published and subject to modification.  However, according to the website for the Supreme Court of Texas, the motion for rehearing was denied and the mandate issued on June 15, 2018.

fraud and misrepresentation claims were defeated because Orca could not prove the

element of justifiable reliance on the bank's statements. Orca appealed only the tort

claims. The Supreme Court of Texas agreed with the trial court and held that Orca was

precluded, as a matter of law, from justifiably relying on the bank's representations of

title.

In doing so, the court observed that "the fourth element [of both fraud and

misrepresentation] has two requirements: the plaintiff must show that it actually relied

on the defendant's representation and, also, that such reliance was justifiable."

*JPMorgan*, 2018 WL 1440625, at *4 (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins.*

*Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (elements of fraud), *Grant Thornton LLP v.*

*Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010) (nature of justifiable

reliance in fraud case); *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442

(Tex. 1992) (elements of misrepresentation)). Recognizing that justifiable reliance is

normally a question of fact, the court wrote, "But the element can be negated as a matter

of law when circumstances exist under which reliance cannot be justified." *JPMorgan*,

*supra* at *5 (citing *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex.

2015) (per curiam) and *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221,

232 (Tex. App.–Dallas 2012, no pet.)).

More specifically,

> In determining whether justifiable reliance is negated as a
> matter of law, courts must consider the nature of the parties'
> relationship and the contract. In an arm's-length transaction,
> the defrauded party must exercise ordinary care for the
> protection of his own interests. A failure to exercise

reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party. And when a party fails to exercise such diligence, it is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated. To this end, that party cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon those representations.

*JPMorgan, supra* at *5 (citations, internal quotation marks, ellipses, and brackets omitted). In other words, a party to an arms-length transaction must be alert to "red flags" and cannot rely on representations which warrant further investigation. *JPMorgan, supra* at *6.

A court's evaluation of justifiable reliance in a "red flags" case is based on the circumstances in their entirety. *Id*. In *JPMorgan*, the court held that Orca was sufficiently sophisticated in the oil and gas business to take the necessary action to protect its interests in an arms-length lease transaction. Its failure to conduct additional title searches prior to handing over millions of dollars when the agreement disclaimed any warranty of title precluded its justifiable reliance claim.

In the course of its opinion, the court cited with approval the Fifth Circuit's analysis of justifiable reliance in *Lewis v. Bank of America NA*, 343 F.3d at 546-47. In that case, Lewis transferred monies he had invested in tax-deferred retirement accounts into certificates of deposit to be used as collateral for a loan to his son's business. As a result, the monies lost their tax-deferred status, resulting in income tax liability and penalties for failing to report the income and pay the tax. Rejecting a fraudulent

inducement claim against the loan officer who allegedly assured Lewis that the funds would maintain their tax-deferred status, the Fifth Circuit wrote:

> Viewing the circumstances in their entirety, including Lewis's access to professional accountants, the amount of money involved in the transaction, and the ambiguous nature of Thomason's "assurance," Lewis's decision to enter into the transaction without undertaking additional investigation into its tax consequences was not justifiable. Accordingly, a reasonable jury could not have found that Lewis actually and justifiably relied on any misrepresentation by the Bank.

*Lewis*, 343 F.3d at 547 (footnote omitted).

Here, Christopher Hamilton, the President of CBH and its negotiator in this arms-length transaction, was a sophisticated businessman with experience in the construction industry and in land transactions. CBH argues that this business and real estate experience is irrelevant because Hamilton did not have experience working with Wal-Mart. But this case does not present an issue peculiar to Wal-Mart. Instead, it is about the necessity of getting the owner of an interest in land to execute the document granting the interest you seek from it. Hamilton was familiar with the requirement of an owner's consent and that, as a separate entity, that owner is independent in determining whether and when to grant that consent.

If time was of the essence to Hamilton with respect to obtaining the cross-access easement, he did not submit any evidence that he communicated the importance of that issue to Murphy. Absent any other protective measure, his recourse was to postpone or refuse to close the transaction unless and until Wal-Mart executed the easement. Absent that, he took his chances that the cross-access easement would be further delayed.

Hamilton's claim that he placed his confidence in Murphy because of its past dealings with Wal-Mart is not persuasive. There is no evidence that Murphy had any control over Wal-Mart's volition, distinguishing this case from *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 274 (5th Cir. 2012) (cited by CBH, but in which an employer was held vicariously liable for the representations of the employee whose relevant work it directed). There is no evidence that Murphy's past relationship with Wal-Mart would produce a cross-access easement within any particular amount of time.

CBH chose to credit every statement that Murphy made that Wal-Mart's execution of the easement was forthcoming. And it chose to disregard every uncontroverted statement that Murphy made that Wal-Mart was notoriously slow in getting around to executing its easement agreements. When Murphy tendered performance of the remainder of its obligations immediately after Wal-Mart executed the easement, CBH chose to silently reject the offer and instead proceed to seek damages from Murphy for Wal-Mart's delay. The law does not permit such a claim in an arms-length commercial transaction.

## 2.  Challenges to *JPMorgan* and the Red Flag Doctrine

CBH argues that this court should reject the red flag doctrine regarding the evaluation of justifiable reliance because the issue was not preserved after CBH rested its case.  CBH also argues that the *JPMorgan* opinion is not persuasive, precedential, retroactive, or on point with a post-trial case such as this.  The Court disagrees.

**Issue Preserved**.  From the beginning of this case, Murphy has argued that CBH could not have justifiably relied on any statement it made because it let CBH know that

Wal-Mart would have to approve the easement. Motion for Summary Judgment, D.E. 20, pp. 8-10 (noting email warning that the easement agreement would not be binding until everyone executed it). "[T]o the extent any of Murphy's emails can be construed as supplying false information, which Murphy specifically denies, any reliance on such emails by Hamilton was unjustified. It should have been obvious to CBH that Murphy had no legal right to convey an easement over Wal-Mart's property." *Id.*, p. 10.

In its First Amended Motion for Summary Judgment, Murphy again attacked CBH's basis for the case by addressing the warnings it gave CBH about Wal-Mart being "terribly slow" and could "take forever" to approve the easement. D.E. 44, p. 11. "In an arm's length transaction, the defendant can reasonably expect the plaintiff to make its own investigation, draw its own conclusions, and protect itself. *Pellegrini v. Cliffwood-Blue Moon Jt. V.*, 115 S.W.3d 577, 580 (Tex. App. — Beaumont 2003, no pet.)." *Id.*, p. 12. Murphy further challenged the justifiable nature of any CBH reliance in a section of the motion addressing what CBH knew prior to closing the transaction, citing *Rich v. Olah*, 274 S.W.3d 878, 887-88 (Tex. App.—Dallas 2008, no pet.), *Tukua Investments, LLC v. Spenst*, 413 S.W.3d 786, 801-802 (Tex. App.—El Paso 2013. pet. denied), and *Robbins v. Capozzi*, 100 S.W.3d 18, 25 (Tex. App.—Tyler 2002, no pet.), which discuss a party's responsibility to act on all of the information available to it, not just the information that supports a cause of action.

Listed in the joint pretrial order is the contested proposition of law, "Whether the Plaintiff justifiably relied upon the representations of the Defendant with respect to the delivery of the cross access easement at closing." D.E. 77, p. 8. In its motion for

judgment as a matter of law after CBH rested its case, Murphy sought judgment because "There is insufficient evidence showing that any reliance by CBH on a misrepresentation by Murphy was justifiable." D.E. 111, p. 10. The issue was again addressed, more generally, at the final charge conference before submission to the jury. D.E. 132, pp. 25-26.

CBH suggests, without authority, that these efforts were insufficient to preserve the claim because in the motion brought after CBH rested, the issue was not further briefed. The Court disagrees. CBH was well aware that Murphy challenged their theories because any reliance was not justified. Legal authorities had been provided on previous occasions, giving CBH further explanation of the nature of the challenge. The issue was adequately preserved with facts and law to satisfy Federal Rule of Civil Procedure 50(a)(2). *See generally, Stewart v. Thigpen*, 730 F.2d 1002, 1006 n.2 (5th Cir. 1984) (treating a motion as sufficient when the relevant facts and law have been presented, albeit outside the four corners of the motion for judgment as a matter of law).

**Persuasive**. While there are exceptions, caveat emptor is a well-established concept in cases involving commercial transactions. "It means that the purchaser must exercise his own judgment upon whatever he reasonably has the means of exercising his judgment upon, pertaining to the thing sold." *Walton v. Reager*, 20 Tex. 103, 109 (1857) (refusing to make the honest expression of errant opinions actionable in an administrator's sale of land); *see also, Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 647 (Tex. 2016) (acknowledging the ancient doctrine of caveat emptor retaining its original force in land transactions).

The red flag doctrine's treatment of justifiable reliance rests upon this solid foundation. It enforces a buyer's responsibility to take into consideration all of the information made available. And that responsibility yields if circumstances show that tortious acts, the relationship of the parties, or the nature of the agreement override the plaintiff's independence or access to information necessary to its exercise of appropriate judgment. *JPMorgan* is persuasive.

**Precedential**. *JPMorgan* is a very recent expression of the red flags doctrine from the Supreme Court of Texas. The motion for rehearing has been denied. It is final and mandate has issued on the case. When the Supreme Court of Texas determines questions of state law, its opinions are binding on federal courts' application of that state law. *E.g., BancPass, Inc. v. Highway Toll Admin., L.L.C.*, 863 F.3d 391, 401 (5th Cir. 2017). CBH has identified no reason that the *JPMorgan* opinion is not entitled to precedential value. This Court is bound to apply it to the question of justifiable reliance in CBH's actions pursuant to Texas state law of fraud and misrepresentation.

**Retroactive**. CBH contends that *JPMorgan's* treatment of the red flags doctrine is a change in Texas law that should not apply retroactively. Yet treatment of matters that vitiate justifiable reliance were pervasive prior to the circumstances underlying this case, whether or not the phrase "red flags" was used. In 2011, an intermediate appellate court in Texas stated, "A person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." *Affordable Power, L.P. v. Buckeye Ventures, Inc.,* 347 S.W.3d 825, 830 (Tex. App.--Dallas 2011, no pet.) (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)). *See*

*also*, *Pellegrini, supra; Rich, supra;* and *Robbins*, each of which pre-dates the facts in this case. *JPMorgan* is a continuation of existing law and is not a new development with only prospective application.

**On Point**. The fact that this Court gave CBH every opportunity to present its best case to the jury does not distinguish the *JPMorgan* case, in which the dismissal of the claims occurred at a pretrial conference. CBH's presentation of evidence at trial maximized its opportunity to raise facts to distinguish itself from the *JPMorgan* factual scenario. But it did not do so. As addressed more fully below, it did not raise any fact issue on the confidential nature of any relationship between the parties. It did not demonstrate that the transaction was anything less than arms-length. It did not show any action that Murphy engaged in that would override CBH's capacity to protect its own interests. The fact that it had that procedural opportunity does not distinguish the substantive law.

### 3. The Red Flags Doctrine Eliminates the Tort Theories

As the *JPMorgan* case makes clear, actual and justifiable reliance is an element that a plaintiff is required to demonstrate with respect to proving fraud and negligent misrepresentation claims. Justifiable reliance is also considered a requirement of statutory fraud. *E.g., Lake v. Cravens*, 488 S.W.3d 867, 895 (Tex. App.—Fort Worth 2016, no pet.). As a matter of law, CBH failed to satisfy that matter of proof.

As demonstrated above, under the circumstances of this case in their entirety, CBH cannot show justifiable reliance when Murphy was another business entity operating at arms-length. The Court DENIES CBH's request for judgment on its tort

theories and GRANTS Murphy's motion for judgment as a matter of law dismissing the tort theories.

## C. Breach of Contract and Statute of Frauds

CBH's remaining theory is breach of contract. The contract is predicated upon a finding that Murphy agreed to deliver a cross-access easement from Wal-Mart to CBH in exchange for CBH's promise to purchase its portion of the tract of land. Jury Charge, D.E. 121, Question 1. The breach is predicated upon a failure to deliver the Wal-Mart executed easement within a reasonable or specified time. *Id*. (Question 2). And CBH's claimed damages are the difference between the value of CBH's tract of land with the Wal-Mart easement and without the Wal-Mart easement—a benefit of the bargain measure. *Id*. (Questions 6).

The alleged agreement is not a written agreement. As set out above, the only relevant written agreement between the parties is the REA. The REA does not include a provision requiring Murphy to deliver an easement over Wal-Mart's property. Instead, it includes an agreement to share whatever access easement it obtains. CBH did not assert any breach of the REA in the joint pretrial agreement (D.E. 77) or in its jury charge (D.E. 121). It did not seek damages for anything less than a sum based on the value of the property with and without the easement from Wal-Mart. Thus its breach of contract claim is solely based on an alleged oral agreement for the transfer of an interest in land.

Murphy thus challenges CBH's breach of contract theory under the statute of frauds.[3]  The statute of frauds provides that an agreement for a sale of land is not enforceable unless the agreement is in writing and signed by the person to be charged with the agreement or by someone lawfully authorized to sign for him.  Tex. Bus. & Com. Code § 26.01.  The granting of an easement is an interest in land included in the scope of the statute of frauds.  *Pick v. Bartel,* 659 S.W.2d 636, 637 (Tex. 1983).  Whether it meets the requirements of the statute of frauds is a question of law.  *Id*.

CBH contends that the statute of frauds does not apply because it is not claiming that Murphy would grant the easement, only that Murphy would deliver an easement granted by Wal-Mart.  CBH argues, "This distinction removes the contract from the statute of frauds because the oral agreement with Murphy was not for the sale or lease of real property.  Therefore, the contract was not required to be in writing."  D.E. 127, p. 3.  Murphy responds that CBH proposes a distinction without a difference.  The Court agrees.

The only way that Murphy could guarantee compliance with such an agreement by a time not controlled by Wal-Mart would be for Murphy to have the power to grant the easement on behalf of Wal-Mart (a matter on which there is no evidence) or have sufficient control over Wal-Mart to compel it to make the grant (another matter on which there is no evidence).  Nothing less would support a measure of damages based on the difference in the value of the land with and without the easement.

---

[3]   CBH complains that this Court has twice rejected the statute of frauds defense in denying Murphy's motions for summary judgment (D.E. 20, 44).  This argument is unpersuasive because CBH's contract claim has been in an amorphous state, ever-evolving during the pendency of this case.  Furthermore, the Court has authority to revise its holdings at any time prior to final judgment.  Fed. R. Civ. P. 54(b).

CBH sought an easement from Wal-Mart as part of a three-way cross-access easement with Murphy. Because it did not obtain that conveyance from Wal-Mart prior to closing on the underlying land transaction, CBH seeks to charge Murphy with the duty to obtain it and contract liability for failing to do so. The statute of frauds prevents this result. The Court DENIES CBH's motion for judgment on the breach of contract claim and GRANTS Murphy's motion for judgment as a matter of law, dismissing the breach of contract claim.

## CONCLUSION

For the reasons set out above, the Court DENIES CBH's motion for judgment in its entirety and GRANTS Murphy's motion for judgment as a matter of law and DISMISSES all claims on the basis of the red flags doctrine and the statute of frauds. For this reason, the Court need not, and does not, address Murphy's additional arguments based on the REA's merger clause, the insufficiency of the evidence, the one satisfaction rule, or CBH's failure to elect remedies.

ORDERED this 1st day of August, 2018.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE